**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
El PASO DIVISION**

GESPA Nicaragua, S.A.

      Plaintiff,

v.

Inabata Europe GmbH,
RECOM AG,
Flextronics International USA (Texas), Inc.,
Flextronics Automotive USA, LLC, and
MKG GmbH Montagebau Karl Göbel,

      Defendants.

Case Number: 3:19-cv-00182-PRM

## FIRST AMENDED COMPLAINT

Plaintiff GESPA Nicaragua, S.A. ("Plaintiff"), complains against Defendant Inabata Europe GmbH ("Inabata"), Defendant Recom AG ("Recom"), Defendant Flextronics International USA, Inc., and Defendant Flextronics Automotive USA, LLC, (collectively "Flex"), and Defendant MKG GmbH Montagebau Karl Göbel, ("MKG").

### Threshold Matter

This First Amended Petition is filed in accordance with this Honorable Court's STANDING ORDER TO REPLEAD IN REMOVED CASES, dated June 11, 2012.  However, as a threshold matter, this case is not properly before this Court.  On May 1, 2018, this Honorable Court granted Inabata's motion to dismiss, without prejudice, on the basis of *forum non convenience*.  On October 31, 2018 this matter was filed in Texas State Court.  Nine months later, on July 9, 2019, Defendant Inabata reversed its prior position that this Court was not a convenient forum, and instead, filed a Notice of Removal to this Court, asserting now that this Court is the proper venue for "*all future*

*proceedings in this matter take place."* Dkt. 1, at 4 (Conclusion).  However, Inabata's Notice of Removal was deficient, as Inabata did <u>not</u> obtain consent from each of the Defendants as required by 28 U.S.C. 1446.  Therefore, on August 8, 2019, Plaintiff has filed a Motion to Remand this matter to State Court pursuant to 28 U.S.C.1447.  Dkt. 12.

Plaintiff hereby files this Amended Complaint subject to a ruling on its Motion to Remand.

## **INTRODUCTION**

1.   This case is about an elaborate conspiracy to defraud the Plaintiff, by way of a *bait-and-switch* scheme.

2.   Plaintiff procured a contract to develop a 100 MW solar park near Puerto Sandino, Nicaragua the ("Project").  The contracting, permitting, financing, insurance, and engineering were all premised on the use of a specific solar panel known as a "*RECOM Black Panther.*"[1]  The entire Project was to be developed in three phases and was valued in excess of $100,000,000.

3.   The first phase (12.5 MW) was for the development and construction of approximately 12.5% of the entire Project (100 MW). To construct phase one, Plaintiff purchased over forty-six thousand seven hundred (46,700+) "*RECOM Black Panther*" solar panels from Defendant Inabata for ultimate delivery and installation in a solar park near Puerto Sandino in Nicaragua. (The entire Project would require approximately 370,000 solar panels.)

4.   Instead of providing the *RECOM Black Panther* panels, Defendant Inabata conspired with the other defendants to defraud Plaintiff GESPA. Specifically, for phase one, Defendant Flex provided over 46,700 solar panels from a SunEdison bankruptcy.  The vast majority of the SunEdison panels that were shipped to Plaintiff were located in El Paso, Texas at the time Plaintiff purchased the panels from Inabata.

---

[1] Exhibit 1, Recom Black Panther Brochure.

5.   According to Flex, it then hired Expeditors International Ocean ("Expeditors" with a Texas address at 450 Pullman Drive, El Paso, Texas) to remove the existing SunEdison labels _on the solar panels_, so that they could affix over 46,000 "_counterfeit_" labels in the same place.[2]  On some of the panels, the Defendants were unable to remove the old labels so they carefully and neatly affixed the "_counterfeit_" label over the top of the old label to hide it.[3]  The task of relabeling over 46,000 labels – _by hand_ – was no small undertaking.  (Upon information and belief, some of the relabeling also took place in California.)  In furtherance of their fraudulent scheme, Defendants Flex, Recom, and Inabata also worked in concert to cover the "SunEdison" logo _on the shipping boxes_, which contained the 46,000+ counterfeit panels.[4]   MKG then attempted to destroy all of the shipping boxes before Plaintiff could discover that they had received SunEdison panels with counterfeit labels.  Tens of thousands of the panels were relabeled and the SunEdison logo placed on the shipping boxes in El Paso, Texas.   Additionally, Flex, Recom, and Inabata created a false flash-test report, exchanging the name Flextronics for Recom on the flash-test report to deceive and complete their fraudulent scheme.

6.   Both of the Flex Defendants then shipped the panels in different shipments, from El Paso, Texas to Los Angeles, California (affecting interstate commerce), and then on to Plaintiff's designated facility in Nicaragua.[5]   The panels were received, inspected, and installed by Defendant MKG. Defendant MKG did not notify Plaintiff of the fraud because it had joined in the conspiracy.[6]  Unbeknownst to Plaintiff, Defendant MKG worked with Flex, Inabata, and Recom

---

[2] Exhibit 2, Counterfeit Recom Label (TÜV Rheinland).
[3] Exhibit 3, Hidden SunEdison Label (TÜV SÜD).
[4] Exhibit 4, SunEdison Shipping Boxes (Concealed Labels).
[5] Exhibit 5 and 6, Bill of Ladings identifying both Flex Defendants.
[6] MKG and Recom conspired to wrongfully exclude GESPA from fulfilling the remaining two phases (87.5%) of the Project, and keep them from installing the remaining 325,000+ panels.  Upon information and belief MKG is now working with a GESPA competitor.

to obtain specialized adaptors to allow them to "*plug-in*" the counterfeit panels.  (This association-in-fact between Inabata and Recom, is referred to herein in as the "enterprise.") To be clear, the success of Defendants' fraudulent scheme depended upon <u>all</u> of the Defendants working in concert to keep secret from Plaintiff their agreement to relabel and ship panels with counterfeit marks on the panels.

7.    After the panels were installed, Plaintiff discovered the deceptive scheme and gave notice to Defendants.  Nevertheless, the Defendants proceeded to 'circle the wagons' and cover up their *bait-and-switch* scheme.  For example, Inabata represented to Plaintiff in an email that "*It is Definitely RECOM Brand*."[7]   Similarly, Flex, Inabata and Recom all represented to the Plaintiff in an email chain, that the Panels were "*RECOM 270 W Monocrystalline Black Panther*".  These were false statements.  The emails record provides clear examples of, the who, what, when, and how relating to some of the many false statements leading up to and continuing after the sale.

8.    Plaintiff has now obtained a copy of the clandestine agreement between the defendants.[8] In that agreement Recom agreed to "*intermediate*" a deal where Flex would "relabel" the panels and sell them to Inabata for a "*preferential price*." Inabata, through the enterprise, worked to commit fraud and engage in counterfeiting activity in Texas.  It even memorialized an agreement in writing.

9.    As further set forth below, the enterprise has a history of engaging in fraudulent activity with other customers.  At least two of which also ended up in litigation.

---

[7] Exhibit 7, Emails containing the required specificity of who made the false statement, when it was made, to whom it was made, and that it was made with the intent that Plaintiff rely upon the false statement.

[8] Exhibit 8, Commission and Set off Agreement (i.e., the "Smoking Gun").

## JURISDICTION AND VENUE

10. As set forth above and in Plaintiff's Motion to Remand, the issue of personal jurisdiction over the parties must be resolved by the State Court.  Dkt. 12.  On June 21, 2019 (with all parties present) the Honorable State Court expressly authorized discovery (including depositions) relating to jurisdiction, and set an evidentiary hearing for August 1, 2019.  Before that Court could conduct its evidentiary hearing, Inabata filed its Notice of Removal.

11. Each of the Defendants purposefully availed itself to doing business in the forum state. The case arises out of or relates to each Defendant's contacts with the state, which were centralized here in Texas.  Each Defendant was immersed in the stream of commerce in Texas, each Defendant purposefully directed the torts of fraud and fraud in the inducement (including affixing the counterfeit marks) to occur in the state of Texas.  There is undisputed personal jurisdiction over at least Inabata and Recom pursuant to the RICO statute's jurisdictional provision, 18 U.S.C. § 1965(b) as the RICO violation occurred in this district.

12. Further, all of the Defendants conspired to have a substantial number of the acts committed in this district, which confers transactional venue.  Those acts include, but not limited to, doing business with Flex, a business located in Texas, selling solar panels located in Texas,[9] re-labeling solar panels while tens of thousands of them were still located in Texas, affixing counterfeit marks on thousands of solar panels while they were still in Texas, shipping panels from Texas to California and then to Plaintiff's facility, falsifying shipping documents to ship panels located in Texas to Plaintiff, creating false run reports in Texas.  The Defendants all exchanged emails regarding the subject panels with Flex, which received those emails in Texas.

---

[9] Exhibit 8 expressly identifies Inabata, Recom, and Flex.  They worked in concert to acquire and miniplate property physically located in the Western District of Texas.

13. Pertaining to GESPA, all of the Defendants worked in concert when they:

- directed communications (email and/or telephonic) in and through *El Paso, Texas*,

- acquired physical control of the 46,000+ counterfeit panels *in El Paso, Texas*;

- stored the 46,000+ counterfeit panels *in El Paso, Texas*;

- relabeled the 46,000+ counterfeit panels *in El Paso, Texas*; and,

- shipped the 46,000+ counterfeit panels to the Plaintiff *from El Paso, Texas*.

Simply put, each of the Defendants purposefully availed themselves to the benefits of the laws of the State of Texas, by conducting business in and through Texas.

14. Specially, Defendant Inabata reached into the state of Texas and purchased the solar panels which were physically located *in El Paso, Texas*.  The Agreement between Inabata and Recom concedes:

> RECOM shall intermediate a transition between Inabata and Flextronics International USA, Inc. in accordance with Inabata shall purchase, at a preferential price, 12.5MW of 270Wp Mono Full Black PV modules (hereinafter the "Products") **which are currently stored in the USA.**

Exhibit 8 (emphasis added).  Due to its specific and ongoing business activities in Texas, Inabata could reasonably anticipate being hailed into a court in Texas.

15. Specifically, Defendant Recom had its proverbial hands all over the state of Texas.  In fact, Recom was the party which "*intermediate[d]*" the transaction between Inabata and Flextronics for the purchase of the "*Products*," *which were located in El Paso, Texas*.  *Id.*   As stated above, the agreement between Inabata and Recom concedes:

> RECOM shall intermediate a transition <u>*between*</u> Inabata and Flextronics International USA, Inc. in accordance with Inabata shall purchase, at a preferential price, 12.5MW of 270Wp Mono Full Black PV modules (hereinafter the "Products") *which are currently stored <u>in the USA</u>*.

Exhibit 5.  Simply put, the parties negotiated the sale of property which was located in El Paso, Texas.  In doing so, Recom had multiple communications with Flex in Texas.  Recom purposefully directed contacts to Texas, and due to its specific and ongoing business activities in Texas, Recom could reasonably anticipate being hailed into a court in Texas.

16. Specifically, Defendant Flex *has a facility located in El Paso, Texas*.   While working in concert with the other Defendants, Flex oversaw the relabeling and shipping for the counterfeit panels from El Paso Texas. Because Flex purposefully directed activity in Texas, and due to its specific and ongoing business activities in Texas, Flex could reasonably anticipate being hailed into a court in Texas.

17. Specifically, Defendant MKG actively assisted the concealment of the counterfeiting activity, which occurred in Texas. Furthermore, MKG was actively immersed in the stream of commerce, as it accepted the counterfeit panels, which were *relabeled in (and shipped from) El Paso, Texas*.  Because of MKG's activity, which directly *concealed the counterfeiting activity in Texas*, MKG could reasonably anticipate being hailed into a court in Texas.

18. As set forth above, Plaintiffs assert that removal was <u>not</u> done in accordance with 28 U.S.C. § 1441. *See also,* Plaintiff's Motion to Remand.  This Honorable Court should remand this case because the RICO and state law claims are interrelated, the factors of judicial economy, convenience, fairness, and comity require that all the claims be tried in the same court. This point is further emphases by the fact that the State Court had already authorized the use of discovery, and set an evidentiary hearing.

<b><u>CONCFLICTING FORUM SELECTION CLAUSES</u></b>

19. On May 1, 2018, this Honorable Court dismissed Inabata on the basis of *Forum Non Conveniens*.   However, each of the Defendants has <u>since</u> taken the position that a dispute with

them should be resolved in a separate forum.[10] By implementing conflicting forum selection clauses into their respective agreements, Defendants seek to *preclude* the Plaintiff from having their claim for *Conspiracy-to-Commit-Fraud*, heard in a single forum.  For example, if all of the various forum selection clauses were enforced:

- the dispute with Defendant Inabata would be sent to the courts of Germany;
- the dispute with Defendant MKG would be sent to the Kingdom of the Netherlands;
- the dispute with Defendant Flextronics would remain in Texas; and,
- no one knows where the dispute would Recom would end up.

Such a result is not equitable.[11] Furthermore, as a matter of procedural due process, Plaintiff has a right to have this matter heard in a single forum.[12]

## **PARTIES**

20. Plaintiff GESPA Nicaragua, S.A. ("**GESPA**") is a foreign company with its principal place of business in Managua, Nicaragua.  GESPA was the prime "*Engineering Procurement and*

---

[10] According to Linda S. Mullenix the Morris & Rita Atlas Chair in Advocacy at University of Texas School of Law, this type of *prelitigation* defense tactic is not novel.  See, *Gaming the System: Protecting Consumers from Unconscionable Contractual Forum-Selection and Arbitration Clauses,* 66 Hastings L.J. 719, 720 (2015)("No matter what courts attempt to do to rein in gamesmanship – by statute, rule, or judicial opinion – attorneys still manage to invent new means to gain litigation advantage through creative pre- and post-litigation practices.")

[11] If the inexorably intertwined claims of fraud and conspiracy are gerrymandered – *literally sent to opposite ends of the earth* – it would result in an incurable quagmire of procedure, discovery, issue preclusion, claim preclusion, etc.

[12] *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) (an alternative form is available "if the entire case and all the parties can come within its jurisdiction." (Emphasis added.)

See also, *In Re Rolls Royce Corp.,* 775 F3d 671 (5th Cir. 2014) ("[T]he court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer.  It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issue to be litigated in two cases.")  (Emphasis added.)

---

*Construction*" ("EPC") contractor for the development of a 100 MW solar generating facility near Puerto Sandino, Nicaragua.   At this time, only phase one of the project has been completed (12.5 MW), and the GESPA has not been allowed to proceed with the completion of the rest of the project.

21. Defendant Inabata Europe GmbH ("**Inabata**") is a European subsidiary of Inabata & Co. Ltd., Japan, a Japanese stock listed corporation. Inabata, as well as Inabata & Co. Ltd., are active in the trading of various products (including electronic components, chemicals and plastics). For purposes of the Project, Inabata promised to provide GESPA with 46,000+ *RECOM Black Panther* panels.

22.  Defendant Recom AG (**"Recom"**) is a foreign company with a principal place of business in San Francisco, California. (Notably, Inabata has an ownership interest in Recom.) For purposes of the Project, Recom intermediated a transaction between Inabata and Flextronics, whereby Inabata acquired 46,000+ counterfeit panels, relabeled as *RECOM Black Panther* panels.

23. Defendant Flextronics Automotive USA, LLC and Flextronics International USA, Inc. (collectively **"Flex"**) are companies in Texas with principal places of businesses in El Paso and Plano, Texas. For purposes of the Project, Flex provided the 46,000+ counterfeit panels from its inventory of SunEdison bankruptcy panels stored in El Paso, Texas. Notably, the panels they provided were not *RECOM Black Panther panels,* but rather a counterfeit *"SunEdison"* panel.

24. Defendant MKG GmbH Montagebau Karl Göbcl (hereinafter **"MKG"**) is a foreign company, with its principal place of business in Germany. MKG actually installed the counterfeit *solar* panels, failed to notify Plaintiff that the panels were fraudulently relabeled, disposed of evidence of the relabeling, and conspired with Defendants to conceal the deceptive substitution of the relabeled and inferior panels.

## MISNOMER/ MISIDENTIFICATION

25.  In the event that a party is misnamed or is not included herein, it is Plaintiff's contention that such was a *"misidentification," "misnomer,"* and/or such are/were the *"alter ego"* of parties named herein. Alternatively, Plaintiff contends that such *"corporate veils"* should be disregarded to hold such parties properly responsible in the interest of justice.

## STATEMENT OF FACTS

### *"Passing off"*

26. Plaintiff was engaged as the prime engineering, procurement and construction ("EPC") contractor for the design, specification, acquisition of equipment, materials and components, and for the construction of a 100 MW solar generating facility to be built near Puerto Sandino, Nicaragua. The Project was to be constructed in three phases.  The first phase alone was 12.5 MW and was valued in excess of $20,000,000.   The total value of all three phases exceeded $100,000,000.

27. In order to meet the Project objectives, Plaintiff entered into a contract with Inabata to purchase the 46,700+ "Black Panther" solar panels and the related components required for the solar facility.

28. Inabata further agreed to provide short term financing of the purchase of the panels and components on the condition that Plaintiff would use *Black Panther* solar panels from its affiliate, Defendant Recom.

29. Plaintiff agreed to this condition. Thereupon, Plaintiff and Inabata entered into a Purchase Agreement, which very specifically designated that the solar panels be delivered as *RECOM Black Panther* panels (referred to as "Black Panther" panels). Only *RECOM Black Panther* solar panels,

of a specific model number, could and would be used in the construction of the Project, which dictated specific specifications, capacity, and construction required.

30. Inabata and Plaintiff then entered into another agreement with Defendant MKG to construct and install the *Black Panther* solar panels and components for the Project at the site.

31. Inabata was to provide directly to MGK the majority of the components, equipment, and material to install the specified *Black Panther* panels. However, instead of providing the correct *Black Panther* panels, Inabata conspired with Flex, Recom, and MKG to switch out the *Black Panther* panels and provide counterfeit *SunEdison* panels to MKG for installation.[13]  This is a text book example of a "*passing off*" scheme.

32. MKG moved the 46,000+ counterfeit panels and components from the port to the Project site and unpacked the panels and components. MKG quickly disposed of the packaging materials that exhibited the "*SunEdison*" labeling and intentionally attempted to conceal from Plaintiff the facts that the panels were shipped on SunEdison boxes and that they were not *RECOM Black Panther* panels.[14]

33. On or about October of 2016, MKG commenced construction of the solar facility using the counterfeit panels.  MKG knew the counterfeit panels were not *Black Panther* panels.  However, it did not disclose this information to GESPA.  Instead, it communicated with the other defendants in an effort to modify the panels so that they could be installed.

34. When Plaintiff became suspicious of the true identity of the panels, it made inquiries to all of the Defendants about the potential problem, including multiple emails, telephone conferences and in person conferences in Nicaragua and Florida.[15] Defendants continued their deceptive, false

---

[13] Exhibit 9, SunEdison Manual.
[14] Exhibit 4, SunEdison Shipping Boxes (Concealed Labels).
[15] Exhibit 7, Emails.

and fraudulent representations that the counterfeit relabeled SunEdison panels were actually the correct *Black Panther* panels, specified in the contracts.

35. Each of the Defendants knew that the solar park was built around *specific specifications* for *RECOM Black Panther* panels; yet, the counterfeit panels compromised the entire solar park.

36. Plaintiff has now obtained reports from two (2) independent authorities, confirming that the panels delivered were not the proper *Black Panther* panels specified in the contracts, but are counterfeit, relabeled SunEdison panels manufactured in 2015.

**The Clandestine Agreement**

37. Rarely is a conspiracy to commit fraud reduced to writing, as it is in this case. On November 20, 2016, Recom and Inabata memorialized their clandestine agreement in a document entitled "*Commission and Set-off Agreement.*" (This is direct evidence of a conspiracy.) Relabeling the panels is akin to removing the Ford decals off of a car – affixing a new Ferrari decals – and then selling the Ford as a Ferrari.

38. The terms disclosed in the agreement are as follows:

   a) "The [Sun Edison] Product shall be Labeled RECOM." (Specification added)

   b) "RECOM shall provide and shall bear sole responsibility for all warranties regarding the Products. RECOM shall indemnify, defend and hold harmless Inabata from and against any claim, demand, lawsuit, cause of action or losses of any nature whatsoever, suffered or incurred by Inabata, arising out of, or in connection with any warranty claim."

   c) "RECOM authorizes INABATA to trade PV modules bearing the registered RECOM Community Trade Mark No. 012482832."

   d) "RECOM shall receive from Inabata, for the intermediation of the abovementioned transaction, a commission amounting to 0,15267 USD watt namely the amount of USD USD (sic) ("the commission"). The above amount is the result of the following calculation (12.500.000 Watts x 0,15267 USD-1.908.375 USD)"

---

Exhibit 8 (typographical errors in original).

## VIII. CAUSES OF ACTION

### COUNT I—FRAUD

### *(Inabata's Fraud in the Inducement of <u>the Forum Selection Clause</u>)*

39. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.    On or about August 1, 2016, Mr. Morten Nygart had a very important conversation with Inabata's Manager, Kazuto Oishi, about the forum selection clause. Mr. Nygart stated that since GESPA was the purchaser of the panels, that GESPA (he) wanted the forum selection clause to have all disputed resolved in Denmark.[16]

40. In response, to Mr. Nygart's request, Kazuto Oishi said the place for the forum selection clause should be Germany, not Denmark, because Recom was the actual manufacturer of the panels and because:

- the panels had been **inspected** in Germany and **had passed** German Quality Assurance standards and bore a TÜV SÜD certification;[17]

- Recom had **never** defaulted on any of its obligation to deliver panels to a customer on time;

- Recom is a large international **manufacturing company** with many facilities throughout the world;

- Recom had **never** been sued over failing to produce panels to a customer on time; and that,

- Inabata **owned** 10% of Recom.

---

[16] It is customary in international commerce that purchaser choose the forum (city and county) where all disputes are to be resolved.

[17] A TÜV SÜD certification means a sampling of the product has been tested for safety and found to meet the minimum requirements of the German Equipment and Product Safety Act.

41. Plaintiff has just recently discovered that the above statements by Inabata were false.  Each of them was made for the expressed purpose of inducing Plaintiff into agreeing to Germany as the county named in the forum selection clause.  It is no known that:

- Recom **had defaulted** on many any of its obligation to deliver panels to a customer on time;[18]

- Recom was **not** a large international company with manufacturing facilities throughout the world.  In fact, RECOM is nothing more than a re-seller of solar panels it purchased from third party manufacturers throughout the world.

- Recom purchases the solar panel from third-parties and then sells them as it they were the manufacturer;

- Recom **had** been sued for failing to provide panels to a customer on time; and,

- Inabata did **not** own 10% of Recom.  In fact, Recom is owned by two brothers, Hamlet Tunyan and Laert Tunyan, with each owing 50%.

42. Moreover, in that same conversation, Kazuto Oishi told Mr. Nygart that the panels had been inspected in Germany and had passed German Quality Assurance standards and bore a TÜV SÜD certification.[19]  Thus, he said since all of the testing was done in Germany, Germany is where the forum selection clause should be.  That statement was also false.  The panels had **not** been inspected in Germany and did **not** have the authority to bare the a TÜV SÜD certification.

43. Plaintiff (Mr. Nygart) specifically considered and relied upon   Kazuto Oishi's representations when  (he) weighed the advantages and disadvantages of the forum selection clause. Ultimately, Inabata's false representation was the determining factor for Plaintiff when it

---

[18] Exhibit 10, Miller Brothers Order and Opinion.  (Recom failed to provide ANY of the solar panel as it agreed.)

[19] A TÜV SÜD certification means a sampling of the product has been tested for safety and found to meet the minimum requirements of the German Equipment and Product Safety Act. Both TÜV organizations have locations in the United States.

agreed to the Forum Selection Clause.  Stated differently, <u>but for</u> Inabata's false representation, Plaintiff would not have agreed to the forum selection clause.

44. Inabata's representations were made for the purpose of inducing Plaintiff into accepting the German Forum Selection Clause, itself.

45. Plaintiff reasonably relied on Inabata's representations when it agreed to the forum selection clause; and did not know of the falsity of the representations.

46. As a direct and proximate result of Inabata's false and fraudulent representations, Plaintiff was induced to sign a German Forum Selection Clause. Defendant Inabata is now seeking to force Plaintiff to litigate far away from the facts, evidence, and location where the fraud took place.

### *INABATA's Fraud in the Inducement <u>of the Contract</u>*
### *(distinct from the Forum Selection Clause)*

47. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.

48. Inabata made false representations to Plaintiff, that it would NOT provide the RECOM *Black Panther* panels pursuant to its sales contract with Plaintiff.

49. The representation was material.

50. The representations were false.  Again, that is like a seller agreeing to sell a Ferrari, but only intending to deliver a Ford disguised to look like a Ferrari. When INABATA made that representation, it knew that representation was false, as shown in the Commission, and Offset Agreement made between Defendants INABATA and RECOM for the purchase of the panels from Flex.

51. Inabata's representation was false. Upon information and belief, thousands of the panels were manufactured and assembled in Mexico.  They were designed and manufactured to U.S. specifications, instead of to European specifications.

52. Inabata made its representations with the intent that Plaintiff would act on it and would be induced into entering into an agreement.

53. Plaintiff relied on the representations and pressed forward with the construction of the solar facility.

54. The representations caused plaintiff injury in an amount to be determined by the jury.

*(Common Law Fraud by Each Defendant)*

55. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.

56. Each of the Defendants made false representations to Plaintiff, that panels being provided to the Plaintiff would be *Black Panther* panels pursuant to the sales contract.

57. Defendants Inabata, Recom, and MKG conspired to falsely represent, that the panels met plaintiff's design specifications.

58. Both Flex entities made the false statements about the specific characteristics and origin of the panels on the shipping invoices and by arranging to have counterfeit labels bearing the counterfeit mark on the panels.  Flex also engaged in fraud by omission for not disclosing that it was relabeling SunEdison panels with Recom labels.

59. On or about July 4, 2017, Spiros Corcokios (with Flex) also sent an email to Plaintiff's senior officer, Mr. Nygart, assuring him that the panels were Recom panels, when Flex knew for certainty that the panels were actually SunEdison panels manufactured by Flex.   This fraud was made to cover-up the fraud that Flex participated in.[20]

60. Defendant MKG made the false statement about the specific characteristics when it aided and abetted Inabata, Flex, and Recom by not disclosing the counterfeit labels bearing the false

---

[20] Exhibit 11, Emails in furtherance of fraud.

specific characteristics.  MKG also engaged in fraud by omission in not disclosing what it knew when it was removing and destroying the SunEdison shipping boxes and reconfiguring the panel connectors without disclosing that information to Plaintiff.

61. All Defendants made false representations to Plaintiff that the panels would originally have specific third-party TÜV SÜD certifications.  Later, Defendants changed the panel to carry the fraudulent counterfeit label and counterfeit certificate of TÜV Rheinland. Each and every counterfeit label constitutes a false representation.

62. Each of the Defendants knew or should have known that GESPA was relying on that false information; they chose not to disclose the truth. None of the Defendants had any intention of providing the *Black Panther* panels.  Nor did any of the Defendants intend to disclose the fact that the panels were not *Black Panther*.

63. The representations and omissions, by all Defendants were made for the purpose of inducing Plaintiff to act by accepting and paying for the counterfeit SunEdison panels.

64. Plaintiff reasonably relied on Defendants' false representations and omissions and did not know of the falsity of the representations until after the panels had been installed.

65. As a direct and proximate result of Defendants' false and fraudulent statements and omissions, Plaintiff has suffered damages in the amount to be determined by the jury.

66. Furthermore, Plaintiff has now become aware of the fact this pattern and practice of fraud is not limited to GESPA.  For example:

a)      In June of 2014, two officers of Recom (Robert Benedict and Isabelle Christenseon) represented to another customer (the Miller Brothers, a U.S. Company) that Recom had specific panels that it could deliver at a set price.  The Miller Brothers also relied on Recom's fraudulent misrepresentations and wired $527,530.00 to Recom.   Recom was well aware that

it would not honor its agreement.  Nevertheless, in furtherance of the fraud, Recom used one or more emails, on June 27, 2014 (wherein it promised a delivery date within 30 days), as well as a telephone call on July 10, 2014 in furtherance of its scheme when it made similar misrepresentations.  These wire communications were used in furtherance of Recom's scheme to defraud the Miller Brothers.

b)      Likewise, in January of 2018 another customer (Arosa Solar) fell victim to the same type of fraud by Recom.  Specifically, on January 3, 2018, Recom's owner (Hamlet Tunyan) represented that Recom had possession of panels and would deliver them at an agreed upon time.  Arosa relied on Recom's fraudulent misrepresentations and wired $171,264.00 to Recom.  However, upon information and belief, Recom had no panels at that time, but was seeking panels made by a third-party, for which they could pass them off as though they were their own.  In furtherance of the fraud, Recom continued to represent that the delivery of the panels was imminent. This too was false.  These electronic wire communications were used in furtherance of Recom's scheme to defraud Arosa.

### (Fraud by Non-Disclosure by Each Defendant)

67. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.

68. Each of the Defendants concealed from or failed to disclose the truth to the Plaintiff about the true nature, origin, manufacturer, specifications, certifications, characteristics of the panels which were implemented into the solar facility.

69. Each of the Defendants had a duty to disclose the true nature, origin, manufacturer, specifications, characteristics, and certifications of the panels which were implemented into the

solar facility to the plaintiff, because they were in a position of trust and had unfettered access to information.

70. Each of the Defendants knew that Plaintiff was ignorant of the true nature, origin, manufacturer, specifications, certifications, and characteristics of the panels which were implemented into the solar facility.

71. Each of the Defendants knew the Plaintiff did not have equal opportunity to discover the true nature, origin, manufacturer, specifications, characteristics of the panels which were implemented into the solar facility.

72. Recom had previously falsely and fraudulently placed counterfeit marks on panels (prior to Plaintiff' interaction with Recom) and claimed its panels were certified by TÜV SÜD.  When in fact, they were not.  For that reason, the TÜV SÜD certification organization black-listed Recom for using the TÜV SÜD certification on panels that were not tested and did not pass the TÜV SÜD certification.[21]   Nevertheless, Recom continued to use the TÜV SÜD in furtherance of its fraudulent schemes. The use of falsely affixing the counterfeit TÜV SÜD on the SunEdison panels was not disclosed to Plaintiff.  None of the Defendants informed Plaintiff about the illegal and fraudulent activities regarding the use of counterfeit marks, nor did they inform Plaintiff that Recom had been sued for fraud and failure to deliver panels for which it was paid.

73. Each of the Defendants was deliberately silent and kept secret the true nature, origin, manufacturer, specifications, certifications, and characteristics of the panels, which were installed into the solar facility, when it had a duty to speak.

---

[21] Exhibit 12, Recom blacklisted by TÜV SÜD.

74. Each of these facts were material, and their falsity has affected not only the performance of the solar facility, but also Plaintiff's cost, its ability to obtain insurance and permanent financing, and its ability to complete the final two phases of the Project.

75. By failing to disclose the true nature, origin, manufacturer, specifications and characteristics of the panels which were implemented into the solar facility, each Defendant intended to induce the Plaintiff into acceptance of the counterfeit panels.

76. Each of the Defendants intended to not disclose the above facts and intended for Plaintiff to relay upon their non-disclosures.  The Plaintiff relied on each of the Defendants' nondisclosure.

77. As a direct and proximate result of Defendants' nondisclosure, Plaintiff has suffered damages in the amount to be determined by the jury.

### COUNT II—CIVIL CONSPIRACY TO DEFRAUD
### (against each Defendant)

78. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.

79. Each of the Defendants was a member of a group of at least five persons/entities Inabata, Recom, both Flex entities, and MKG.

80. The object of the combination was to accomplish an unlawful purpose, or a lawful purpose by unlawful means; including an unlawful purpose of affixing false trademark emblems, deceiving plaintiff by re-packaging and re-labeling the panels.

81. Each of the Defendants understood that Plaintiff was requiring very specific *Black Panther* panels for this specific Project.

82. Each of the Defendants knew that the panels, which were provided to Plaintiff, were **not** the, specified *Black Panther* panels, but were, in fact, overstock relabeled SunEdison panels, obtained from a bankruptcy, that contained counterfeit labels and counterfeit marks.

83. Each of the Defendants had a meeting of minds and worked in conjunction with each other to deceive, mislead, and defraud the Plaintiff and then agreed to conceal the true nature of the counterfeit labels with counterfeit marks.  Specifically, the Defendants attempted to pass off the panels with the Counterfeit marks on them as though they were, in fact, *RECOM Black Panther* panels.

84. At least one member committed an unlawful, overt act (e.g.., relabeling the panels) to further the course of action.  Both Flex entities also falsely filled out the shipping labels with false information about the origin of the panels.  (Both Flex entities knew the origin of each panels and their actions were not mere mistakes but were intentional.)

85. Plaintiff reasonably relied on each of the Defendants to provide complete, truthful and accurate information.  Plaintiff did not know of the falsity of their representations and material omissions until independent acceptance inspections discovered that the installed panels contained revealed, counterfeit labels on the Plaintiff's panels.

86.  As part of Plaintiff's initial deposit, it paid Inabata in excess of $600,000.  Inabata was to provide interim financing.  As a result of the fraudulent scheme, Plaintiff lost the entire Project valued in an estimated $100,000,000. Plaintiff has been directly and proximately injured by the wrongful act in an amount to be determined by a jury.

### COUNT III — Violation of Federal Civil RICO, 18 U.S.C § 1962(c) & (d) (against INABATA).

87. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.

88. The Person.  This Count is against Defendant Inabata only.  Inabata is a "person" capable of holding legal or beneficial interest in property within the meaning of 18. U.S.C. § 1961(3).

---

89. <u>The Enterprise</u>.  Inabata and Recom formed an "association-in-fact" for the common and continuing purpose described herein and constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4).  Inabata engaged in the conduct of the enterprise's affairs through a continuing pattern of racketeering activity.

90. The solar industry is a tightknit group of only a small number of companies who manufacture solar panels on a sizable scale. There is a long-standing interpersonal relationship between Inabata and Recom.  This long-standing relationship between Inabata and Recom is a business relationship which, upon information and belief, has been in existence for more than 5 years.  Specifically, Inabata and Recom also had a business relationship with each other regarding solar panels <u>prior</u> to Inabata selling panels to Plaintiff with counterfeit labels and counterfeit marks. Further, this longstanding relationship between Inabata and Recom is demonstrated by the fact that, prior to any involvement by GESPA, Recom owed $2,374,742.19 to Inabata from previous transaction(s) between the two companies.  This longstanding relationship is further demonstrated by the parties "Commission and Set-Off Agreement," wherein, Recom (represented by Hamlet Tunyan) expressly agreed to "intermediate" a transaction between Inabata and Flex[22]

91. Each of the members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

92. The association-in-fact enterprise, as alleged herein, was not limited to the predicate acts and extended beyond the racketeering activity.  Rather, it existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of selling and financing Solar

---

[22] It is well known that the objectives of a conspiracy are not advanced by way of publication thereof.  Therefore, additional discovery will aid in determining the full scope and history of the interpersonal relationship between the Person and the Enterprise.

Panels to Plaintiff and to their other customers.  Inabata and Recom do have, upon information and belief, a legitimate business plan outside of the pattern of racketeering activity.  Such legitimate business activities included the sale, financing, and brokerage of third-party panels to customers, without using counterfeit marks or relabeling.

93. The activity of both the enterprise and the person affect interstate commerce.  They also affect foreign commerce.  This is evident by the fact that thousands of the panels were manufactured in Mexico, shipped to and relabeled in Texas, then shipped on to California, for ultimate delivery internationally in Nicaragua.

94. As detailed below, Inabata's scheme violated 18 U.S.C. §2320:

a)      *Regarding the sale of Flex panels to GESPA:* From October 2016 and December 2016, the enterprise created and affixed in excess of 46,000 labels and counterfeit marks onto the SunEdison panels, which falsely stated that they were *Black Panther* panels. They also printed fraudulent documents called "Flash-Test Report" to state the panels were Recom panels.[23]   In addition to the counterfeit documents, two (2) separate fraudulent counterfeit marks and labels were uses:  (i) they used fraudulent counterfeit marks for the *TÜV Rheinland* certification; and (ii) they also used the fraudulent counterfeit marks for the *TÜV SÜD*[24] certification as well.  *TÜV SÜD* itself referred to Recom's use of their mark as "forged

---

[23] A flash list is a document that shows the specifics characteristics of each and every panel.  The flash list originally identified Flex as the manufacturer and the tester of the panels.  However, a counterfeit flash list (document) was created and sent to Plaintiff that stated Recom the manufacturer and tester of the panels.

[24] Both the TÜV SÜD trademark and the TÜV Rheinland are registered marks with the U.S. Patent Trademark Office.

---

documents."[25]   The counterfeit mark, labels and documents stated the panels were Recom *Black Panther* panels, when they were not.

   **b)**   ***Regarding a sale of Hansel Technics Co. Ltd., panels:***  The enterprise Inabata and Recom passed off panels manufactured by Hansel Technics Co. Ltd as if they were Recom. Attached as Exhibit 13 is the Bill of Lading in the Hansel Technics Co. Ltd matter.  The Bill of Lading is dated November 2, 2016.  The Bill of Lading is for a shipment of lesser quality solar panels (estimated to be tens of thousands of panels) manufactured in China, sent through South. Korea to the New York Port of Entry.  Upon information and belief, the ultimate unsuspecting customer of the panels was NGR Energy, Inc.  Specifically, NRG Energy, Inc. is an American energy company with a headquarters at 16301 Texas 249 Access Rd, Houston, TX 77064.  Just as Inabata Europe Gmbh was the seller of the panels to GESPA, Inabata was also the seller of the Hansel Technics panels as well.  Just as Recom was the intermediator in the Inabata sale of Flex panels, the Bill of Lading shows Recom is listed as the person to receive notice.  The Bill of Lading further shows that the panels code number was Recom's code number, Recom Code Number "RCM-280-6MB." The counterfeit mark, labels and documents stated the panels were Recom panels, when they were not.

95. These actions violated 18 U.S.C. 2320, which states in relevant part:

   (a) OFFENSES.—Whoever intentionally—

      (1)  traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services,

      (2) traffics in labels … [or] documentation…, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive,
      …

---

[25] Exhibit 12, Recom Blacklisted by TÜV.

18 U.S.C. 2320.

96. The acts of racketeering were not isolated, but rather the acts of Inabata and the enterprise were related in that they had the same or similar: <u>purpose</u> (to pass off counterfeit marks and counterfeit labels as authentic), <u>result</u> (the defrauded victims paid money they would not have otherwise paid), <u>participants</u> (Inabata and Recom), <u>victims</u> (purchaser of panels bearing counterfeit marks), and <u>method of commission</u> (affixing counterfeit Marks, and counterfeit Labels).[26]

97. Plaintiff is aware of other Recom, and Inabata customers who have been defrauded. Furthermore, upon information and belief, until 2018, Recom did not even have its own manufacturing facility, which was capable of manufacturing a fully functional solar panel for sale. Instead of being a manufacturer, as it represented, Recom was a broker (re-seller) who acquired cheap overstock panels made by third-parties, mostly from third-world countries like China, Taiwan and Mexico, and then relabeled them, as if they were high quality panels, prior to the delivery to unsuspecting customers.  (This activity is akin to "passing off" a knockoff Rolex watch made in China as a genuine Rolex watch as if it were made in Switzerland.)   In addition, upon information and belief, they still had access to overstock solar panels, which the enterprise intends to pass off, and continues to pass off, as though they are something they are not.

98. Further, the acts of racketeering through the enterprise has been continuous. There is an open and continued threat of repetition of such fraudulent conduct by the enterprise, as Recom continues to represent that it is the largest PV module manufacturing company in Europe. The Recom website <u>continues</u> to falsely represent that the panels specifically provided to GESPA were Recom's 270Wp Black Panther mono modules.[27]  Further, upon information and belief Flex had,

---

[26] Exhibit 14, International News Article.
[27] Exhibit 15, Recom Website.

and may still have an abundance panels that it does not have sales contracts for.  At the same time, upon information and belief, Recom has unfulfilled orders it is unable to full fill.[28]

99. This "passing off" scheme is open ended.  Recom boasts to the unsuspecting general public on its website that the panels at GESPA's Project site are Recom *Black Panther,* for the purpose of <u>continued</u> sales.  However, as verified by two independent authorities, they are not Recom Black Panther Panels, but rather designed and manufactured in accordance with SunEdison specifications.   Each sale by Inabata with the counterfeit TÜV SÜD certificate and with *TÜV Rheinland* certificate constitutes a new predicate act.  Accordingly, since TÜV SÜD has learned of this scheme it has blacklisted any further use of its mark on Recom panels.[29]

100.  As a direct and proximate cause of the pattern of racketeering, Plaintiff has been harmed in many ways including:  Plaintiff had economic harm resulting from the loss of phase two and three of the Nicaragua Project.  In addition, phase one has been economically damaged in regards to financing, insurability, marketability, regulatory authorization, and ultimate viability of the Project.

101.  Plaintiff is <u>not</u> the only victim of the scheme.  The acts of racketeering were not isolated, but rather the acts of Inabata and the enterprise were related in that they had the same or similar: <u>purpose</u> (to pass off counterfeit marks and counterfeit labels as authentic), <u>result</u> (the defrauded victims paid money they would not have otherwise paid), <u>participants</u> (Inabata and Recom), <u>victims</u> (purchaser of panels bearing counterfeit marks), and <u>method of commission</u> (affixing counterfeit Marks, and counterfeit Labels).

---

[28] Without the aid of discovery, it is impossible to determine the full scope of this "passing off" scheme implemented by Inabata.

[29] Exhibit 12, Recom blacklisted by TÜV SÜD.

102.  Inabata's agreement to violate 18 U.S.C. § 2320 is a conspiracy to violate 18 U.S.C. §1962(c). Thus, Inabata has violated 18 U.S.C. §1962(d), which states, in pertinent part: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection… (c) of this section."

103.  WHEREFORE, pursuant to §1964(c), Plaintiff demands judgment against Inabata for three times its damages, at least $60 million, plus pre-judgment interest, taxable costs, and reasonable attorney's fees.  Inabata is jointly and severally liable for all damages caused by its coconspirators. Plaintiff also demands an injunction against Inabata from further RICO violations.

104.  Plaintiff also seeks a trial by jury on this Count.

### COUNT IV— Conspiracy to Violate Federal Civil Rico, 18 U.S.C. § 1962(d)

105.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

106.  In violation of 18 U.S.C. § 1962(d), the Inabata agreed with non-RICO defendant Recom to facilitate the passing off scheme as alleged herein.

107.  GESPA has been damaged and asserts claim for damages pursuant to RICO civil damages provision, 18 U.S.C. §1964(c).

108.  GESPA lost its financing for the Project, and the ability to continue to complete all three (3) phases of the Project.  The exact amount of Plaintiff's injuries is to be determined by the jury.

109.  Plaintiff demands judgement three times its damages, reasonable attorneys' fees and costs as well as any other relief as authorized.

### COUNT V—Alternative Contract Pleadings

### *(Breach of Contract)*

110.  Plaintiff entered into a contract with Inabata.

---

111. Plaintiff materially complied with the terms of the Agreement.

112. Defendant Inabata failed to perform its obligations under the contract, by failing to provide *RECOM Black Panther* panels.

113. As a result of Defendant Inabata's breach, Plaintiff has suffered damages, in the amount to be determined by the jury.

114. Plaintiff prays for damages to be proven at trial plus Attorney's fees.

### (*Unjust Enrichment*)

115. Plaintiff incorporates by reference and re-alleges each and every paragraph and allegation as set forth in this Complaint.

116. Each of the Defendants wrongfully induced Plaintiff to enter into the Agreement with Defendant by promising that they would sell, provide, or install *Black Panther* panels.

117. Each of the Defendants made the false representations and promises for the purpose of inducing Plaintiff's reliance on its false promises and representations.

118. Plaintiff relied upon Defendants' false promises and representations and paid money to both Defendant Inabata and Defendant MKG.

119. As a direct result of each of Defendants' unjust conduct, they have been enriched in the amount to be determined by the jury.

120. Plaintiff prays for damages to be proven at trial by the jury.

### **PRAYER**

121. WHEREFORE, Plaintiff respectfully requests a judgment against Defendants, for:

    a) Compensatory Damages;

    b) Consequential damages;

    c) Equitable Relief;

d)  Exemplary Damages;

e)  Disregarding the corporate vail and holding Recom, Corp and Mr. Hamlet Tunyan and Laert Tunyan, jointly and severely liable for any judgment against Recom.

f)  Attorneys' Fees, Costs, and prejudgment and post judgment interest as provided by law and statutes;

g)  Treble Damages for Inabata's engagement in racketeering activity; and,

h)  Plaintiff further prays for all other relief provided by law, justice and equity.

## JURY DEMAND

122.  Wherefore, Plaintiff respectfully requests a trial by jury.


Dated: August 21, 2019                                  Respectfully submitted,

                                                        By:*/s/ Joshua H. Sisam*
                                                        Joshua H. Sisam, *Esq.*
                                                        TX No. 24079346
                                                        MN No. 0394786
                                                        **Sisam & Associates LLP**
                                                        110 Industrial Drive
                                                        Boerne, Texas 78006
                                                        (830) 428-0333 – Office
                                                        (830) 331-4044 – Fax

                                                        **ATTORNEY FOR PLAINTIFF**